JOHN KAYLOR and another *v.* FRANCIS B. O'CONNOR.

Under the act for the better security of mechanics and others in the city of New York, passed in 1851, the claimant, whose notice of claim is first filed with the county clerk, is entitled to be first paid in full, out of the fund in the owner's hands, (due to the contractor,) and in preference to lien holders whose notices are subsequently filed.

But a subsequent lien holder, who desires to contest a prior lien, either by denying its validity or amount, or averring that, although it be first in time, it is subordinate in equity, must himself become an *actor*, and institute proceedings for that purpose.

In proceedings to foreclose the lien, it is not necessary for the claimant to make those who have filed notices and acquired liens subsequently to the filing of the claimant's notice, parties to the proceeding.

*It seems*, that a claimant is not bound to make lien holders, whose liens are *prior* to his own, parties to his proceeding, unless he seeks to impeach their validity, or deny the amount thereof, or allege some higher equity.

But *if they are not made parties*, the whole amount of such prior liens will be allowed to the owner, (as sums to be first paid out of the fund in his hands,) before he can be required to pay any thing to such subsequent claimant, and the latter will not be permitted to contest their validity or amount.

SPECIAL TERM, APRIL, 1853.

Before WOODRUFF, J.; all the members of the court concurring.

MOTION to strike out portions of the answer. The opinion sets forth the facts and the grounds of the application.

*Albert Mathews*, for the plaintiffs.

*William Dodge*, for the defendant.

BY THE COURT. WOODRUFF, J.—This action was commenced by proceedings taken in pursuance of the "Act for the better security of mechanics," &c., passed July 11th, 1851, against the defendant, as the owner of certain buildings in the city of New York.

Under the order (made on the appearance of the parties) for the joining of issues, the plaintiffs allege that there is due to them the sum of $264 20, for work, labor and materials furnished to Messrs. Judd and Newton, contractors with the defendant, towards the erection of the buildings in question, and that in pursuance of the act above referred to, they did, on the 29th day of July, 1852, file with the county clerk the notice required by the act to create a lien, &c.

The answer, after denying that the work, &c., were furnished as alleged, and the value thereof, avers, that besides the notice filed by the plaintiffs, and after the filing of such notice, viz., on the 11th and 17th of August, and 29th of September, 1852, various other similar notices were filed by other persons, named in the answer, claiming various amounts, also therein specified; the aggregate of all which claims (the plaintiffs'

being included) is $1,005 15 ; and that at the time of the filing and docketting of such liens, the whole amount remaining due to the contractors, (Judd and Newton,) under his contract with them, was $417 20.

The defendant thereupon insists that the plaintiffs are entitled to only a rateable proportion of the sum of $417 20, (after deducting the defendant's costs and expenses in this action,) in the ratio which the amount that may be found due to them from the contractors, bears to $1,005 16, (the whole amount for which notices of claim have been filed,) and he prays that the rights of all the parties may be protected, and he may be discharged from all liability to the plaintiffs, and also to the other parties interested.

The plaintiffs now move to strike out this portion of the answer as irrelevant, and for other relief, &c.

The defendant's counsel insists that the matters thus stated are relevant upon two grounds, viz. :

*First.* That there is no priority among lien holders, given by the statute, and, therefore, proof of the facts stated will reduce the amount of the plaintiffs' recovery, because there will be not exceeding $417 20 to divide among claimants to the amount of $1,005 16.

*Second.* That the facts set forth show that there are numerous persons (the alleged contractors as well as the subsequent lien holders) who are interested in the matter in controversy, and who are necessary parties to a complete determination or settlement of the questions involved therein. And, therefore, that by setting up these facts, the defendant may rightfully, and for his own protection, invoke the exercise of the power given to the court, by the 122d section of the code, which provides that in such case " the court must cause them to be brought in as parties to the action."

As to the first ground stated, I feel little hesitation in saying that *upon the facts stated in this answer*, the plaintiffs, if they establish the validity of their claim as alleged in the complaint, are entitled to be paid in priority to other claimants, whose notices of claim were subsequently filed.

It is true, that the statute does not in very terms say, that when there shall be many liens, they shall be paid in the order in which the notices were filed; but the whole statute construed together, does, to my mind, clearly indicate such a result.

The extent of the lien is, by the 1st section of the act, distinctly made to depend upon the *time* when the notice was filed. The amount which the owner can be required to pay depends entirely (according to the construction we have given to the statute in *Doughty* v. *Devlin*, May general term, 1852,) (a) upon the *time* when the notice was filed.

The claimant can *instantly*, on filing his notice, commence proceedings to foreclose the lien acquired, and if there be a sufficient fund in the hands of the owner, can compel payment.

In this view, the lien is by the statute unqualified and unconditional for the *sum due the claimant*, to the *extent* of the owner's interest in the building, and so far forth as there remains money in his hands, payable according to the terms of his contract for the erection. And there is nothing in the statute warranting the suggestion that any event, *subsequent* to the filing of the notice, can operate to destroy the lien or reduce its amount.

Besides, if the statute did neither by its terms nor by implication assign priority among the lien holders, the equitable doctrine would still apply, that among liens, that which is first in time is first in rank. " *Qui prior est in tempore potior est in jure*" applies, although the equities of the lien holders are in all respects equal.

There may be cases in which prior equities among the lien holders, *existing independently of the statute*, may disturb a preference founded in the mere order of time, if those who shall claim such prior equity take proper measures therefor in due season; as where the contractor himself has filed notice of claim for the whole balance due upon the contract, while

(a) *Ante*, p. 625.

Kaylor v. O'Connor.

he had himself made default of payment to the sub-contractors, laborers, material men, &c.    I cannot doubt that in such case, they might successfully invoke the equitable powers of the court to prevent the defeat of liens acquired by them, although filed subsequently to his, and require the owner to apply the fund to their benefit.    But until they do take such affirmative action, and establish such higher equity, the prior claimant must be first paid in full.

The *second* ground insisted upon by the defendant, in support of his answer, is urged as involving two questions—

1*st*. Are subsequent lien holders necessary parties to the proceeding to foreclose ? &c.

2*d*. Is the contractor a necessary party?

I. Are subsequent lien holders necessary parties ?

If the statute had simply secured to the claimant a lien, and left the whole matter of its enforcement to be conducted according to the existing rules and practice of the courts, without giving any directions on the subject, it would probably be necessary, on filing a bill to foreclose, to make all subsequent lien holders parties.    In analogy to the practice upon the foreclosure of a mortgage, with a view to the sale of the fee simple of the mortgaged premises, it would seem that all persons having a claim, to have a lien thereon at the time of the commencement of the suit, should be made parties to any suit the effect of which may be to destroy their lien.    It is, moreover, eminently just that the subsequent lien holder should have notice, and, in some mode, an opportunity to come in and deny the amount, and, if he can, the existence of the alleged first lien, by means of which the security he has may be taken from him.    He may be able to show, that nothing is due to the claimant who is first in time ; or that, if any thing is due, the lien which is first in time is subordinate in equity. And this is especially apparent when the lien holder who first files his claim is an insolvent contractor, and all others are his unpaid laborers and material men.    Besides, justice to the owner requires that he shall not, after being compelled to appropriate the fund in his hands to the payment of the earliest

lien, be liable to have such payment impeached by a subsequent claimant, who denies that any thing was due on the former.

My first impressions strongly inclined me to hold, that it is proper to call in all who hold liens when the proceeding is commenced.   But further examination of the statute leads me to the conclusion, that full protection to all these interests does not require it, and that the legislature did not contemplate a proceeding which should *necessarily* require the presence, as parties, of any but those who, independently of the statute, had rights which might be affected by the suit.

1. It appears, by the first section, that the legislature had in view, at the moment of the passage of the act, the probability of there being many liens subsisting at the same time; and yet they do not, in prescribing the mode of foreclosure, intimate that the plaintiffs should give notice to other claimants.

2. According to what I deem the true construction of the statute, (as first above stated,) the right of the first lien holder is, to the extent of the fund in the owner's hands, absolute, to the exclusion of all who come after him, and so long as the owner does not deny the amount claimed by the plaintiffs to be due, nor suggest that any other claimant denies such amount, it does not appear that there is any reason for withholding payment, or calling in such other parties, provided the owner is fully protected in all cases, *in the taking of the account of the fund in his hands*, by allowing the full amount of prior liens before any thing is adjudged to the plaintiffs.

3. The proceeding for the foreclosure is prescribed by the statute, and in respect to subsequent lien holders, it divests them of no right, legal or equitable, except such as the statute itself creates.   If, then, the statute be construed to authorize a foreclosure to which they are not parties, it works no wrong, since their lien is given in subordination to *all* its *provisions*. Without the statute they have *no* lien.   They are, therefore, not injured if all the fund in the owners' hands is exhausted before their lien is reached.   They are in no worse position than they would be without the statute.

4. A subsequent lien holder, finding alleged prior liens, (of which he necessarily had notice by the very fact of their being filed,) if he can aver their illegality, set up a higher equity in his own favor, impeach their amount, or charge fraud or collusion therein to his prejudice, may undoubtedly file his complaint in equity, and upon the general principles of equity, claim an investigation of their merits, and have them set aside or postponed; and if with constructive notice of their existence, he does not interfere, it is no injustice to him to say, that neither the owner nor the court are bound to invite him to come and contest them.

5. The statute would in this respect seem to have established a relation among lien holders, similar to that existing between judgment creditors. Those whose judgments are subsequent, were not parties to the suits in which the prior judgments were recovered, and yet their judgments are postponed to the full amount of such prior judgments, without an opportunity to contest the claim on which the latter were recovered, or its amount. If they desire to impeach them, the subsequent judgment creditors must become *actors*, and go themselves into court with the grounds of such impeachment.

6. There are some practical difficulties in carrying out any other rule. If it be deemed necessary to make subsequent lien holders parties, what time shall be fixed as the period after which it shall not be necessary to add further parties? There may be daily additions to the number of claims filed with the county clerk.

Shall those be made parties who have filed claims at the time the notice is served on the owner, requiring him to appear in court? or all who have filed claims on or before the day of appearance? or all, who, at any time before judgment, have acquired liens? Shall the plaintiff be required to notice the constantly increasing number of persons who are acquiring an equitable interest in the fund? If so, it is difficult to perceive when or how his proceeding can be brought to a final determination.

7. Some time must be deemed fixed or be *taken* at which

the necessity of adding parties must cease; and whatever stage be selected, it must be by regarding that stage as having the practical effect of a notice of *lis pendens*, and making all interests, subsequently acquired, subordinate to the suit, without any necessity of calling the parties before the court.

The language of the statute does not prescribe any such addition of parties; and unless some rule of equity which is not inconsistent with the statute, requires it, the direct and simple mode of conducting the foreclosure, without any such addition, ought to be pursued. And, in this view of the subject, there is neither impropriety nor injustice, nor, as I apprehend, danger of injustice, in giving to the mere filing of the claim with the county clerk, the effect of a *lis pendens*, so far forth as respects any subsequent change of interest in the property affected, and as to liens upon the property thereafter acquired.

8. The effect of this construction of the statute is to protect the owner in paying the whole amount due to the prior lien holder, without the hazard of being required to pay the same amount to one who is subsequent, and without litigating, with such subsequent lien holder, the validity or amount of such prior lien; while, on the other hand, it does not prevent the subsequent lien holder, if he wishes to impeach the former by charging collusion, or fraud, or even denying the extent or amount of the prior liens, from becoming himself the actor, (*a*) and invoking the equitable powers of the court to protect the fund, and defeat any effort by the former to withdraw it from him, under color of a lien, when nothing is due. If this be the correct rule, any claimant, on filing his notice with the county clerk, perceiving that there are claims already filed, (it may be by the contractor, his own employer, or vendee,) may at once protect himself by instituting proceedings to enforce his own lien, and avoid such as, though prior in time, are in truth subordinate in equity.

Although the present motion does not call for any opinion upon the point, it would seem to follow as a corollary from the

---

(*a*) See *Sullivan* v. *Decker, post.*

foregoing views, that it is in no case necessary for a subsequent lien holder, in a proceeding to foreclose his lien, to make prior lien holders parties to his proceedings, unless he seeks to deny their legality or amount, or alleges a higher equity. And in the absence of any such impeachment, the amount of such prior liens must be allowed to the owner, in taking an account of the fund in his hands, as sums to be paid out of the fund in preference to the plaintiffs. This protects the owner fully, and does complete justice to all the lien holders.

II. The defendant's counsel is in error in supposing that the present motion involves the inquiry, whether the *contractor* should be made a party to this proceeding?

It appears by the complaint herein, that George Judd and Charles Newton are the contractors with the owner, (the defendant,) and that the plaintiffs' claim is for work done and materials furnished upon *their* employment, and in virtue of the plaintiffs' agreement with them.

Every fact, therefore, which is material to the inquiry, whether Judd and Newton ought to be made parties defendant, appears on the face of the complaint. Nor is any additional fact material to that question stated in that portion of the answer which the plaintiffs seek to strike out.

If the defendant wished to insist that the contractors were necessary parties to the final determination of the matters involved, it seems to me that it would be quite sufficient to raise the point in the answer, by way of objection to the plaintiffs' further proceeding, or by a motion to the court to add the contractors as parties, and to insist that such final determination cannot be had unless the contractors are brought before the court.

All that is said in the answer about other subsequent liens is, therefore, irrelevant.

If the objection was raised in the answer, the plaintiffs would, doubtless, proceed at their peril; and if they did so without making the contractors parties, the question would, when the case comes on, be before the court for determination; and should the court then see that complete justice cannot be done

without having the contractors brought in, and that the statute in question admits of such a course, there is, doubtless, power given by the code for the necessary direction to that end. (*a*)

Whether the defendant shall be permitted to amend his answer, and raise the objection in this case, if he desire to do so, must be left to a future motion for that purpose. The plaintiffs are entitled to be heard on such a motion. They will, perhaps, insist that the defendant is not acting in good faith; that the contractors admit their claim to be due, and are willing, or have consented that the defendant should pay it. In such case, leave to amend would probably be withheld, since the inference would be warranted that delay and vexation were the defendant's object.

The motion of the plaintiffs must be granted; but, as the questions involved are, I think, raised in good faith, and appertain to the construction and effect of a new statute, the plaintiffs' cost of motion, fixed at $10, may abide the event of the suit.

Motion granted.

---

(*a*) See *Sullivan* v. *Decker*, and *Foster* v. *Skidmore*, *post*.

